

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-1997

# Knabe v. The Boury Corp

Precedential or Non-Precedential:

Docket 95-3614

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Knabe v. The Boury Corp" (1997). *1997 Decisions.* Paper 116.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 29, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 95-3614

KARLA J. KNABE,
APPELLANT

v.

THE BOURY CORP. d/b/a Big Boy East
d/b/a Elby's Big Boy,
APPELLEE

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-01627)

Argued: December 10, 1996
Before: BECKER, MANSMANN, and GREENBERG,
Circuit Judges.

(Filed May 29, 1997)

J. GREGORY GIANNUZZI,
 ESQUIRE (ARGUED)
VINCENT A. CICCONE, ESQUIRE
Giannuzzi & Ciccone
Penn Oak Professional Building
85 Universal Road
Pittsburgh, PA 15235

Attorneys for Appellant

CAROLE S. KATZ, ESQUIRE
 (ARGUED)
STACY L. DUGGAN, ESQUIRE
Reed, Smith, Shaw & McClay
435 Sixth Avenue
Pittsburgh, PA 15219-1886

Attorneys for Appellee

**OPINION OF THE COURT**

BECKER, Circuit Judge.

This appeal by Karla Knabe arises from her civil action against Boury Corporation alleging that she was a victim of unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951 et seq., while she was employed as a waitress at Boury's "Elby's Big Boy" restaurant in Monroeville, Pennsylvania. Knabe contends that she was subjected to a hostile work environment created by Kevin Humbrecht, one of the restaurant managers. The district court, having concluded that Boury was not liable as a matter of law for Humbrecht's actions because it took prompt and adequate remedial action after Knabe reported the harassment to company officials, as required by Bouton v. BMW of North America, Inc., 29 F.3d 103 (3d Cir. 1994), granted summary judgment to Boury. Although we view the facts in the light most favorable to Knabe, the non-moving party, because we conclude that there is no genuine issue of material fact that the actions taken by Boury in response to Knabe's complaint were other than "reasonably calculated" to prevent future acts of harassment, we affirm.1

_____

1. Knabe makes two other contentions on appeal, both of which we reject summarily. First, Knabe contends that the district court erred in granting summary judgment without addressing her "retaliation" claim. Knabe's complaint, however, fails to plead a retaliation count. Second, Knabe contends that the district court erred in rejecting her constructive discharge claim. We disagree. Knabe's constructive discharge claim, as

2

I.

Knabe began working as a waitress at the Elby's Big Boy restaurant on August 6, 1993. According to her affidavit and deposition testimony, over the course of the following two months, Humbrecht engaged in several acts of sexual harassment. On at least a dozen occasions, he bumped into her from behind, rubbed himself against her, or ran his hands over her buttocks at the pie cooler or in other behind-the-counter spaces. On one occasion in September 1993, Knabe showed Humbrecht a broken light in the women's restroom. Several male employees were standing just outside, and as Humbrecht and Knabe exited, Humbrecht pretended to pull up his pants and his zipper in the presence of the other employees. Knabe testified that, when she expressed her displeasure after each of these incidents, Humbrecht responded "don't take it personal."

On September 5, 1993, Knabe fell in the waitress area, causing her skirt to come up and exposing most of her legs and lower body. Sometime after her fall, Humbrecht asked her whether she had been wearing underwear when she fell. And on October 13, 1993, Humbrecht called Knabe at home at approximately 7:50 a.m. to ask her to come into work early. She told him she would be in after she had showered and had a cup of coffee. Later that day, Humbrecht asked her whether she had been having sex with her fiance when he called that morning.

_____

presented here, is not a separate ground for relief, but rather would factor into the damages (e.g., backpay) available to Knabe had she prevailed in proving Boury's liability for sexual harassment. At all events, Knabe has not presented evidence sufficient to sustain a constructive discharge claim under Goss v. Exxon Office Systems Co., 747 F.2d 885, 887-88 (3d Cir. 1984), where we held that a plaintiff has been constructively discharged if "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Id.; see also Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir. 1992). As we conclude that Knabe has not adduced evidence that the remedial action chosen by Boury was lacking, we think it is clear that Knabe could not meet this test.

After Knabe had threatened to report his conduct to his supervisor, Humbrecht removed her from the work schedule.2 Knabe testified that, throughout her employment, whenever she had threatened to report him, Humbrecht told her that "life in the unemployment line" was very unpleasant. Knabe has acknowledged that, except for the restroom episode, there were no witnesses to any of Humbrecht's actions.

On October 20, 1993, Knabe complained by telephone to Sharon Barnes, who supervised the Monroeville restaurant as well as four other Elby's. Knabe reported the instances of harassment described above, as well as the fact that she had been taken off the work schedule when she threatened to report Humbrecht.3 This was the first indication to Elby's management about Humbrecht's conduct. Barnes consulted Elby's procedures for investigating a sexual harassment complaint, and also contacted the director of Big Boy East and Elby's legal counsel for advice about investigation procedure.

On October 21, 1993, Barnes interviewed Humbrecht. He denied any improper comments to Knabe on October 13, 1993, and Barnes did not ask him about the other incidents. Barnes, along with Elby's director of operations, met with Knabe on October 23, 1993, and Knabe informed them that she wanted Humbrecht to be discharged or transferred to another restaurant. Barnes then interviewed three of Knabe's co-workers, all of whom had worked on Knabe's shift on October 13, 1993. Each reported to Barnes that they had not witnessed Humbrecht make any improper statements to Knabe, and that they had never observed any inappropriate behavior by a manager in the restaurant.

At the conclusion of her investigation, Barnes decided not to reprimand or otherwise sanction Humbrecht, based on

_____

2. Boury's version is that Knabe was removed from the schedule as a disciplinary measure for writing a rude note to Randy Gilbert, the manager responsible for scheduling, and for telling Humbrecht how to run the restaurant.

3. In her affidavit, Knabe stated that, when she reported the harassment, Barnes said that she "thought Kevin had learned his lesson." Barnes explained in her declaration that Humbrecht had been transferred to the Monroeville Elby's because he had engaged in a consensual affair with a female subordinate at another Elby's.

4

her (mistaken) belief that she could not make a finding that an employee had engaged in sexual harassment without corroborating testimony. However, she met with Humbrecht and informed him that Knabe was to be returned to the work schedule immediately. More importantly, Barnes reminded him that the "company does not tolerate any sexual comments or actions" and that any "company violations of this policy will receive possible suspension and or termination." Both Barnes and Humbrecht signed a "record of conversation" acknowledging the substance of the conversation. Humbrecht also acknowledged that the "procedures were explained to me and I do understand them. I will continue to adhere to them."

The next day, October 26, Barnes met with Knabe. She informed Knabe that, because there were no witnesses to Humbrecht's conduct, she could not conclude that Humbrecht had done anything inappropriate and, hence, she could not reprimand Humbrecht. Barnes also told Knabe that she had been restored to the work schedule, and that she should call Barnes or certain other members of Elby's management if the conduct recurred. Knabe responded by informing Barnes that she could not return to work because Humbrecht had not been transferred or fired, and that she would pursue her recently filed EEOC charge. Both Barnes and Knabe signed the record of conversation reporting the substance of the conversation.

Boury's papers represent that, at all times during the period in question, the company's sexual harassment and open door policies were posted on the Communications Board at the restaurant along with the names and phone numbers of company managers to contact to lodge a complaint. Moreover, the open door policy appeared in the employee handbook. Knabe, however, testified that she never saw these policies during her employment at the restaurant.

In September 1994, Knabe filed a complaint in the District Court for the Western District of Pennsylvania, alleging that she was a victim of unlawful harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951 et seq. After discovery,

5

Boury moved for summary judgment. The magistrate judge to whom the case was referred filed a report concluding that, while there was a genuine issue of material fact as to whether Knabe was subjected to a hostile work environment, Boury could not be held liable as a matter of law for Humbrecht's actions because it took prompt and effective remedial action after learning of Humbrecht's conduct, as required under Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990), and Bouton v. BMW of North America, Inc., 29 F.3d 103 (3d Cir. 1994), and hence recommended that Boury's motion be granted. After a de novo review of the pleadings and evidence, the district court adopted the magistrate judge's report and granted summary judgment to Boury. On appeal, Knabe contends that there are genuine issues of material fact that preclude summary judgment in Boury's favor. The standards for summary judgment and our standard of review are well known and are set forth in the margin.4

II.

A.

Knabe contends that Humbrecht subjected her to a hostile work environment during her two months of

_____

4. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon a motion for summary judgment, the non-moving party, to prevail, must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, we must grant all reasonable inferences from the evidence to the non-moving party. See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no `genuine issue for trial.' " Id. at 587. Our review on appeal is plenary. The district court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), and we have appellate jurisdiction over the final order under 28 U.S.C. § 1291.

employment at the Monroeville Elby's. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986) ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.") We have held that, to bring a claim for sexual harassment under Title VII because of an intimidating and offensive work environment, a plaintiff must establish " `by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee.' " Andrews, 895 F.2d at 1482 (quoting Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510 (11th Cir. 1989)). Even if a work environment is found to be hostile, a plaintiff must also show that the conduct creating the hostile work environment should be imputed to the employer.

In Andrews, we set forth the five factors that a plaintiff must establish to bring a successful hostile work environment claim against his or her employer: (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability existed. Id.; see also Spain v. Gallegos, 26 F.3d 439, 447 (3d Cir. 1994).[5]

The crucial question here is the fifth factor: whether Boury can be held liable for Humbrecht's actions.[6] In

_____

5. Employer liability under the Pennsylvania Human Relations Act follows the standards set out for employer liability under Title VII. See Hoy v. Angelone, 691 A.2d 476 (Pa. Super. Ct. 1997); see also West v. Philadelphia Elec. Co., 45 F.3d 744 (3d Cir. 1995) (utilizing Title VII standards in case involving PHRA hostile work environment claim).

6. The district court concluded that Knabe has established a genuine issue of material fact as to whether Humbrecht created a hostile work environment. Boury contends that, even if we conclude that Knabe has presented a genuine issue of material fact on the question whether Boury can be held liable for Humbrecht's alleged actions, we should affirm the summary judgment on the ground that Knabe had not presented sufficient evidence to establish the existence of pervasive and severe harassment. Because of our disposition of this appeal, we need not reach that question.

7

Vinson, supra, the Supreme Court rejected the notion that employers are strictly liable for sexually hostile work environments created by employees. Rather, drawing from the fact that an "agent" of an employer is included in the definition of employer in Title VII, 42 U.S.C. § 2000e(b), the Court directed that agency principles be used as guidance in determining employer liability for hostile work environments created by employees. 477 U.S. at 72. We elaborated on those agency principles in Bouton v. BMW of North America, Inc., 29 F.3d 103 (3d Cir. 1994).

We made clear in Bouton that the liability of an employer is not automatic even if the sexually hostile work environment is created by a supervisory employee.7 We recognized three potential bases in the Restatement (Second) of Agency for holding employers liable for harassment committed by their employees. First, under § 219(1), employers are liable for the torts committed by employees within the scope of their employment. We noted in Bouton that, while such scope-of-employment liability is often invoked in quid pro quo cases because a supervisor has used his or her actual authority over the employee to gain sexual favors, this liability is inapposite in hostile environment cases: "[I]n a hostile environment case, the harasser is not explicitly raising the mantle of authority to cloak the plaintiff in an unwelcome atmosphere." Bouton, 29 F.3d at 107.

Agency law provides two other theories through which a plaintiff can hold an employer liable for sexual harassment, which are more appropriate in a sexually hostile work environment case like Knabe's. Under Restatement § 219(2)(b), employers are liable for their own negligence or recklessness: in this context, an employer is liable for "negligent failure to discipline or fire, or failure to take remedial action upon notice of harassment." Bouton, 29 F.3d at 106. And under § 219(2)(d), employers are liable if the harassing employee "relied upon apparent authority or

_____

7. Knabe, therefore, incorrectly asserts that respondeat superior liability automatically attaches to the employer when a supervisor, who has the authority to hire, fire, and discipline the victim of the harassment, creates the hostile work environment.

8

was aided by the agency relationship." Id. Knabe relies on the former principle in contending that Boury is liable for the hostile work environment created by Humbrecht.

B.

Knabe submits that there is a genuine issue of material fact whether Boury was negligent or reckless in responding to her complaint that Humbrecht harassed her. We have explained that an employer is liable for an employee's behavior under a negligence theory of agency "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action." Andrews, 895 F.2d at 1486; Bouton, 29 F.3d at 107 ("[U]nder negligence principles, prompt and effective action by the employer will relieve it of liability.").8 Knabe concedes that Boury cannot be charged with knowledge of Humbrecht's activities until October 20, 1993, when Knabe complained to Barnes. Thus the question here is whether Boury took prompt and adequate action after receiving notice of Humbrecht's alleged actions on October 20, 1993.

_____

8. Our holding in Bouton that prompt and effective remedial action by an employer will relieve it of liability under a negligence theory of agency, 29 F.3d at 107, does not alter our holding in Andrews that an employer's failure to take prompt and adequate remedial action may expose it to such liability, 895 F.2d at 1486. As we will discuss in the text, a remedial action is adequate if it is reasonably calculated to prevent further harassment. In Bouton, the remedial action was deemed adequate under the Andrews test because it was effective. This makes sense. A remedial action that effectively stops the harassment will be deemed adequate as a matter of law. On the other hand, it is possible that an action that proves to be ineffective in stopping the harassment may nevertheless be found reasonably calculated to prevent future harassment and therefore adequate. Thus, where an employer's prompt remedial action is not effective (or, as in this case, where the effectiveness of the prompt remedial action cannot be tested), courts may still decide that the action was adequate as a matter of law. Hence, though Knabe's decision to quit prevents us from determining whether Boury's remedial action was effective, the question before us is whether there is a genuine issue of material fact as to whether that action was adequate.

9

Knabe does not challenge the district court's conclusion that Boury's response to her complaint was prompt. Rather, she focuses on the requirement that a remedial action must be adequate, and she contends that there is a genuine issue of material fact regarding the adequacy of Boury's actions. According to Knabe, Barnes' investigation was so flawed that it could not have produced an adequate remedial action. To support this claim, she has presented several pieces of evidence that Barnes' investigation had significant flaws.

First, she points to certain aspects of Barnes' deposition testimony. Barnes testified that she believed she could not make a finding that an employee had engaged in sexual harassment without a witness who could corroborate the complainant's allegations. Accordingly, she believed that she could not reprimand Humbrecht because there were no witnesses to the alleged harassment. In related testimony, Barnes also stated that she did not take Knabe's credibility into account in investigating the claim. In short, Knabe submits, Barnes would not have reprimanded Humbrecht because there were no witnesses to the harassment even if she found Knabe's complaint to be fully credible.

Knabe also points to Barnes' records of conversation, which show that Barnes questioned Humbrecht only about the October 13 incident and not about the other alleged instances of harassment. Similarly, she asked the three employees whom she interviewed whether they had ever observed any manager at the restaurant make any improper advances or comments, without referencing Knabe's specific allegations. Moreover, she failed to interview the employees who witnessed the bathroom incident. Knabe contends that, because of these circumstances, Barnes' investigation failed to turn up information that was vital to determining whether Humbrecht had harassed her. According to Knabe, the resulting response by Boury was ineluctably inadequate, and she would have returned to an unabated hostile work environment. Based on this evidence, Knabe contends that the investigation was so poorly run that there is a genuine

10

issue of material fact as to whether the remedial action taken was adequate.9

We disagree. The question before us is not whether the investigation was adequate -- it appears not to have been -- but rather whether the remedial action was adequate. Even if a company's investigation into complaints of sexual harassment is lacking, the employer cannot be held liable for the hostile work environment created by an employee under a negligence theory of liability unless the remedial action taken subsequent to the investigation is also lacking.10 In other words, the law does not require that investigations into sexual harassment complaints be perfect. Rather, to determine whether the remedial action was adequate, we must consider whether the action was "reasonably calculated to prevent further harassment." See, e.g., Saxton v. AT&T Co., 10 F.3d 526, 535 (7th Cir. 1993); Ellison v. Brady, 924 F.2d 872, 882 (9th Cir. 1991); Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983).

It is clear to us that the action taken here was reasonably calculated to stop Humbrecht's harassment, even viewing the facts in the light most favorable to Knabe. Although Barnes testified that she was unable to make afinding that harassment occurred or to subject Humbrecht to disciplinary measures without a corroborating witness (an incorrect premise), she nevertheless took remedial action.11

_____

9. Knabe also points to evidence that Humbrecht had been transferred to the Monroeville restaurant because he had engaged in a consensual affair with an employee he supervised at another restaurant. See supra n.3. She contends that Barnes' failure to take this information into account in assessing whether Humbrecht harassed Knabe constituted another serious flaw in Barnes' investigation. This contention, however, is based on speculation that Humbrecht had also harassed the employee at his prior post, and Knabe has presented no evidence of prior sexual harassment claims lodged against Humbrecht. The evidence regarding Humbrecht's transfer to the Monroeville restaurant is, therefore, irrelevant.

10. That said, employers would be well advised to establish protocols to ensure careful and complete investigation of sexual harassment complaints.

11. Of course, we do not imply that the presence of a corroborating witness may not be important to an employer in determining that

The record of the conversation between Barnes and Humbrecht on October 25, which was signed by both Barnes and Humbrecht, reflects that Barnes warned Humbrecht that the "company does not tolerate any sexual comments or actions. Any company violations of this policy will receive possible suspension and/or termination." Moreover, Humbrecht was directed to restore Knabe to the schedule immediately. The record of the conversation between Barnes and Knabe the next day, which was signed by Knabe and Barnes, demonstrates that Knabe was informed that she should contact the company at any time regarding any improper language or sexual advances. Barnes also provided Knabe with the names and phone numbers of four members of Boury management, including herself, whom Knabe could contact with any future complaints.

Even though the company did not reprimand Humbrecht, as it well might have, we find this remedial action adequate as a matter of law because it was reasonably calculated to prevent further harassment. As a result of the two meetings with Barnes, Humbrecht was made aware of his responsibilities, and Knabe was made aware of her rights in case of future improper conduct. Knabe has presented no evidence that there would have been a hostile work environment had she returned or that Humbrecht would have felt free to continue his harassment upon her return to work. See Ryczek v. Guest Servs. Inc., 877 F. Supp. 754, 759 (D.D.C. 1995) ("Even if the investigation was not handled perfectly, the plaintiff has presented no evidence to suggest that Guest Services did anything that would have allowed any harassment to continue."); cf. Konstantopoulos v. Westvaco Corp., ___ F.3d ___, 1997 WL 222821 (3d Cir. 1997) (rejecting a per se rule that requiring an employee to work in close proximity to co-workers responsible for prior harassment constitutes hostile work environment).

Moreover, Knabe has presented no evidence that, if a proper investigation had been performed, Barnes' response

---

remedial action is necessary. Rather, we point out that an employer can decide that a complaint is justified even if uncorroborated. On the other hand, an employer need not credit a complaint simply because an employee makes it.

12

would have been different -- namely, she has not shown that Humbrecht would have been reprimanded, suspended, or fired. Under these circumstances, even assuming that Barnes should have credited Knabe's allegations and concluded that Humbrecht harassed her, Knabe has not established any genuine issues of material fact as to the adequacy of Boury's response to her complaint.

We also reject Knabe's contention that there is a genuine issue of material fact as to whether any remedial action was taken. According to Knabe, it is unclear from the record whether Barnes actually "warned" Humbrecht not to engage in further harassment. If Humbrecht was not given a warning, the argument continues, then he was completely exonerated and no remedial action was taken. See Fuller v. City of Oakland, 47 F.3d 1522, 1529 (9th Cir. 1995) ("An employer whose sole action is to conclude that no harassment occurred cannot in any meaningful sense be said to have `remedied' what happened. Denial does not constitute a remedy. Nor does the fact of investigation alone suffice; an investigation is principally a way to determine whether any remedy is needed and cannot substitute for the remedy itself.").

In our view, the evidence presented by Knabe points only to the conclusion that remedial action was taken by Boury. Barnes' record of the conversation between her and Humbrecht reports that the company policies respecting sexual harassment were "discussed." While Barnes herself did not choose the word "warn," we think that informing Humbrecht that "any company violations of this policy will receive possible suspension and/or termination" was clearly a warning and that no reasonable jury would find in Knabe's favor as to whether the company actually took remedial action.

In reaching these conclusions, we make several observations. Although we determine that Boury's remedial action was adequate in spite of Barnes' flawed investigation, it is also clear that there may be cases in which an employer's investigation is so flawed that it could not be said that the remedial action was adequate. For example, the investigation might be carried out in a way that prevents the discovery of serious and significant

13

harassment by an employee such that the remedy chosen by the employer could not be held to be reasonably calculated to prevent the harassment. An investigation must be undertaken, see Swentek v. USAir, 830 F.2d 552, 558 (4th Cir. 1987) ("In taking remedial action, USAir was obliged to investigate Swentek's charges and to present a reasonable basis for its subsequent actions."), and an employer can be held liable if a faulty investigation renders its subsequent remedial action inadequate, i.e., not reasonably calculated to prevent further harassment.

Knabe objects to the remedial action selected by Boury, and approved by us here, on the ground that Humbrecht should have been transferred from the restaurant orfired. We conclude that, if the remedy chosen by the employer is adequate, an aggrieved employee cannot object to that selected action. Concomitantly, an employee cannot dictate that the employer select a certain remedial action. We agree with the Seventh Circuit that: "No doubt, from [the plaintiff's] perspective, [the defendant] could have done more to remedy the adverse effects of [the employee's] conduct. But Title VII requires only that the employer take steps reasonably likely to stop the harassment." Saxton, 10 F.3d at 535-36.

From this holding it also follows that taking punitive action against the harassing employee, e.g., reprimand, suspension or dismissal, is not necessary to insulate the employer from liability for a hostile work environment.12 So long as the remedy is reasonably calculated to prevent future instances of harassment, the company cannot be held liable under a negligence theory of agency. Ryczek, 877 F. Supp. at 760 ("[A]n employer, in order to avoid liability for the discriminatory conduct of an employee, does not have to necessarily discipline or terminate the offending employee as long as the employer takes corrective action

_____

12. In fact, an employer might be faced with a lawsuit filed by the employee allegedly responsible for the harassment if the employer takes punitive action without ensuring that adequate grounds exist for the action. See, e.g., Hope A. Comisky, "Prompt and Effective Remedial Action?" What Must an Employer Do to Avoid Liability for "Hostile Work Environmental" Sexual Harassment?, 8 Lab. Law. 181, 195 (1992).

14

reasonably likely to prevent the offending conduct from reoccurring." (citation omitted)).

We do not, of course, suggest that nonpunitive action will be an adequate remedy in all cases.13 Whether a nonpunitive remedy is reasonably calculated to end the harassment is, to a certain extent, a function of the severity and frequency of the harassment, and is a highly fact-specific inquiry. The more severe and more frequent the harassment, the less likely a nonpunitive remedy will be found adequate. But where, as here, the plaintiff has presented no evidence that a nonpunitive remedial action was not reasonably calculated to end the harassment, summary judgment for an employer is appropriate.

Knabe also contends that the effect of the district court's judgment is that a complainant must return to work after the remedial action in order to present evidence sufficient to create a genuine issue of material fact regarding the adequacy of the remedy. According to Knabe, the district court's holding implied that she could have withstood summary judgment only by presenting evidence that she faced a sexually hostile work environment when she returned to the workplace. We disagree. Knabe must only present enough evidence to show, taking that evidence as true, that the remedial action was not "reasonably calculated" to prevent further acts of harassment, and even a plaintiff who fails to return to work because of dissatisfaction with the remedial action chosen by the employer can make this showing.

The question whether a chosen remedy was reasonably calculated to prevent further acts of harassment can be answered at the time that remedy is put into place. While evidence that an employee returned to a hostile environment after the remedial action is certainly helpful to a plaintiff's case, it is not necessary for resolving whether, at the time it was carried out, the employer's response was reasonably calculated to end the harassment. Moreover, the rule that a plaintiff must show that the remedy was not

---

13. Indeed, Boury's own counsel conceded at oral argument that a warning would not be an adequate remedy in a situation in which an employee alleged that she was raped by another employee.

15

reasonably calculated to prevent further acts of harassment prevents a different, but no less unfortunate, result: it makes clear that a plaintiff cannot survive summary judgment merely by failing to return to his or her job after the remedial action at issue is taken.14

The judgment of the district court will be affirmed.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

14. Knabe also relies on language in Bouton that "an effective grievance procedure--one that is known to the victim and that timely stops the harassment--shields that employer from Title VII liability for a hostile environment." 29 F.3d at 110. Based on this language, she contends that, because there is an issue of fact as to whether Knabe knew about the grievance procedure, see supra p. 5, she has presented sufficient evidence to withstand summary judgment with respect to whether Boury was negligent in carrying out the remedial action. We disagree. While employers would be well advised to ensure clear and permanent notice of its sexual harassment policy and grievance procedure, the language from Bouton suggests only one way in which an employer can escape negligence liability for a sexually hostile work environment created by an employee. So long as the remedial action taken is prompt and adequate, it is not necessary that the plaintiff have previous knowledge of a sexual harassment grievance procedure for the employer to be entitled to summary judgment.

16