OPINION
SMITH, Circuit Judge.
Hopelynn Neely appeals from an order of the United States District Court for the Western District of Pennsylvania, which granted summary judgment in favor of her former employer, McDonald’s Corporation, on Neely’s claims of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Con. Stat. § 951.[1] For the reasons set forth below, we will affirm the judgment of the District Court.
Neely worked for a McDonald’s restaurant in Crafton, Pennsylvania, beginning in August of 2003. The following month, Desi Carter started work at this same location as an assistant manager-trainee. In early October, Carter began harassing Neely, touching her inappropriately on several occasions, and calling her “babe.” Neely provided a written complaint on October 27, 2003 to Christine Belloek, the restaurant manager, prompting Belloek to call her supervisor Gwen Menzer. Men-zer initiated an investigation. Thereafter, on November 12, 2003, Menzer issued a written warning to Carter that his behavior and language violated McDonald’s “zero tolerance policy” regarding discrimination and sexual harassment. The warning indicated that any future violations of the policy could result in further discipline, including termination. At the time this warning was issued, Menzer and Bel-loek reviewed and reiterated McDonald’s “zero tolerance policy” with Carter. Carter signed the written warning. In addition to this disciplinary meeting, Menzer instructed Belloek to schedule Neely and Carter on different shifts. These measures were effective in stopping the offensive conduct, at first.
After about a month, Neely and Carter’s shifts began to overlap for approximately an hour. According to Neely, this was not problematic. However, by the end of December or the beginning of January, Carter started working much of the same shift as Neely. According to Neely, Carter “was looking [her] up and down” and persisted in calling her, and other female employees, “babe.” On January 22, Carter touched Neely’s lower leg while she was waiting on a customer. According to Neely, Carter claimed he was reaching to get sauce that was stored under the counter. Neely filed a complaint with Belloek. Bel-loek advised that she would inform Menzer of Neely’s complaint. Five days later, Neely resigned, believing that neither Bel-loek nor Menzer were going to respond to her complaint.
Thereafter, she filed a civil action against McDonald’s and Carter. She alleged, inter alia, claims under Title VII and the PHRA against McDonald’s for a hostile work environment and constructive *85 discharge.[2] After discovery closed, McDonald’s moved for summary judgment. The Court rejected Neely’s contention that Carter was a supervisor and concluded that her hostile work environment claim failed because McDonald’s had taken prompt remedial action upon learning of the offensive conduct. It also granted summary judgment in favor of McDonald’s on Neely’s constructive discharge claim because she had not established that the subsequent conduct was so intolerable that a reasonable person would have felt compelled to resign.
Neely contends that the District Court erred in concluding that Carter was not a supervisor for purposes of Title VII. “The basis of an employer’s liability for hostile environment sexual harassment depends on whether the harasser is the victim’s supervisor or merely a coworker.” Huston v. Procter & Gamble Paper Products Corp., 568 F.3d 100, 104-05 (3d Cir.2009). In Huston, we considered “who qualifies as a ‘management level’ employee” in the context of imputing constructive notice to an employer of coworker sexual harassment. We concluded “that an employee’s knowledge of allegations of coworker sexual harassment” could be imputed to the employer “where the employee is sufficiently senior in the employer’s governing hierarchy, or otherwise in a position of administrative responsibility over employees under him, such as a departmental or plant manager, so that such knowledge is important to the employee’s general managerial duties.” Id. at 107. We also determined that an employee’s knowledge could be imputed if the “employee is specifically employed to deal with sexual harassment.” Id. In concluding that the employees who had notice of the sexual harassment that Huston complained of were not managers, we considered that these employees were not part of “ ‘the collective body of those who manage or direct an enterprise or interest....’” Id. (omitting citation). Although Huston’s coworkers, who had notice of the sexual harassment, were responsible for overseeing the performance of others in completing the work at hand, they lacked any authority to hire or discipline the others. Id. at 107-08. Such employees, we concluded, were not managers for purposes of imputing notice to their employer of ongoing sexual harassment. Id. at 108-09.
We find Huston instructive. Carter’s position, though labeled assistant manager, did not bestow upon him the authority to hire, fire, and discipline the staff he worked with during his shift. He neither scheduled the staff on his shift nor assigned them to work stations. Those duties were performed by Bellock, the store manager. She was responsible for the operations of the restaurant and answered to upper management. Accordingly, we agree with the District Court that Carter was not a supervisor for purposes of Title VII.
Because Carter was a coworker, McDonald’s may be liable “only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.” Id. (citations omitted). We have held that “an employer’s remedial measure is nonetheless adequate if ‘reasonably calculated’ to *86 end the harassment.” Jensen v. Potter, 435 F.3d 444, 453 (3d Cir.2006) (quoting Knabe v. Boury Corp., 114 F.3d 407, 412-13 (3d Cir.1997)). In Knabe, we instructed that “whether a chosen remedy was reasonably calculated to prevent further acts of harassment can be answered at the time that remedy is put into place.” 114 F.3d at 415. Thus, the fact that a harasser may persist in the offensive conduct does not preclude a determination that the remedy was adequate. Id. at 411 n. 8, 415; see also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1305 n. 20 (3d Cir.1997) (observing that in Knabe “[w]e held instead that a remedial action is ‘adequate’ if it was ‘reasonably calculated to prevent further harassment,’ whether or not it actually succeeded in doing so”), abrogated on other grounds in Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
We conclude that McDonald’s remedial measures were prompt and adequate. It is undisputed that Bellock contacted Men-zer without delay after receiving Neely’s written complaint in October of 2003, and that Menzer conducted an investigation. Although Menzer was unable to corroborate Neely’s complaints, Menzer concluded that Carter had violated McDonald’s “zero tolerance policy.” As a result, she met with him on November 12 in Bellock’s presence, issued a written warning that indicated he had violated McDonald’s “zero tolerance policy,” reviewed McDonald’s policies with him personally, and warned that he could face termination if the conduct did not cease.[3] In addition, she directed that Bellock rearrange Carter’s shifts. These steps, according to Neely, alleviated the problem at first. That they failed to completely put an end to Carter’s conduct, however, does not mean that they were inadequate at the time these measures were taken. Knabe, 114 F.3d at 415. Accordingly, we conclude that the District Court did not err in its grant of summary judgment for McDonald’s on Neely’s hostile environment claim.
Neely’s constructive discharge claim is based on Carter’s conduct after their shifts began to substantially overlap in late December. In Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), the Supreme Court instructed that a “hostile-environment constructive discharge entails something more” than just offensive behavior that is severe or pervasive enough “to alter the conditions of the victim’s employment and create an abusive working environment.” Id. at 147, 124 S.Ct. 2342. It reiterated that a plaintiff advancing a constructive discharge claim “must show working conditions so intolerable that a reasonable person would have felt compelled to resign.” Id. We recognize that after Neely’s and Carter’s shifts overlapped that some of Carter’s conduct was offensive and inexcusable. We cannot say, however, that Neely demonstrated that Carter’s conduct constituted “something more” than a hostile environment claim. Indeed, Neely’s admissions minimizing the severity of Carter’s post-remediation conduct preclude a reasonable inference that his action rose to the level of being “so intolerable” that a reasonable person would have been forced to quit. Id.
We will affirm the judgment of the District Court.

. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We exercise jurisdiction pursuant to Federal Rule of Civil Procedure 54(b) and 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997).

. Because the PHRA is "generally interpreted] in accord with its federal counterparts,” our discussion of Neely’s hostile environment and constructive discharge claims applies to her claims under Title VII and the PHRA. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996); see also Weston v. Pennsylvania, 251 F.3d 420, 426 n. 3 (3d Cir.2001).

. McDonald's "zero tolerance policy" does not require termination of the offender. It states that “[i]f the report has merit, McDonald's will take corrective action, including, but not limited to, disciplinary action against the offender ranging from a warning to termination.”