OPINION
AMBRO, Circuit Judge.
Jacqueline Young appeals the District Court’s grant of summary judgment in *306 favor of her former employer, Temple University Hospital, on her claims for hostile work environment, constructive discharge, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. We affirm.[1]
I.
Jacqueline Young became a Certified Occupational Therapist Assistant (at times referred to by the acronym “COTA”) in 1983, and was hired by Temple University Hospital as a contractor in its Occupational Therapy Department in January 2005. Two months later, Temple hired her as a full-time, union employee. Young’s responsibilities as a COTA included assisting therapists in the evaluation, diagnosis, and treatment of patients.
Young’s direct supervisor was Josette Merkel, the departmental supervisor for the Occupational Therapy Department. Young received favorable performance reviews from Merkel in August 2005 and April 2006. During her August 2005 evaluation, Young discussed with Merkel the possibility of being promoted to “Senior COTA,” a position Young had held at other rehabilitation centers, in light of her many years of experience. Temple did not have such a position. Merkel nonetheless agreed that Young would be qualified should that position exist, and told Young she would “look into” creating it.
In addition to Occupational Therapists and Occupational Therapist Assistants, the Hospital employs “Rehabilitation Aides” whose responsibilities include assisting with patient treatment, obtaining supplies, cleaning up after patient treatment sessions, and transporting patients within the hospital. Young had several conflicts with a Rehabilitation Aide named Roosevelt Brant, Young’s subordinate, whose conduct is the subject of her claims.
Young frequently complained to Merkel that Brant refused to take direction from her. For example, in August 2005 Brant refused Young’s request that he clean dishes after a patient treatment program. Young complained about the incident to Merkel, who orally disciplined Brant and advised him that he was required to take direction from Occupational Therapist Assistants like Young. Nearly a year later, in July 2006, Brant refused Young’s request to retrieve gloves from the supply room, raised his voice, and began “screaming and spitting” in Young’s face. Young reported this incident to Merkel, who again disciplined Brant and advised him that his responsibilities included responding to the requests of Occupational Therapist Assistants.
Young also told Merkel that she believed Brant refused to take direction from her, and treated her with hostility, because she was a woman. Young complained that Brant would frequently “bump” into her and “block [her] passage ... [by] standing] in the doorway so [Young] would have to walk around him.” Young never witnessed Brant treat male employees in a similar manner.
In August 2006, Young met with Richard Lutman, the Hospital’s Director of Labor Relations, to complain about Brant’s behavior. According to Young, Lutman listened to her complaints, assured her that he “would look into it,” and told her he could not comment further because disciplinary matters were confidential. Later that month, Temple suspended Brant for one day as a result of several incidents, including (1) his July 2006 incident with *307 Young, (2) his poor quality of work (for example, failing promptly to take patients’ vital signs and clean up after patient treatment sessions), and (3) leaving the department without permission during his shift. Brant appealed his suspension, which Temple upheld.
Brant’s behavior continued after his suspension. In late October 2006, Young complained to Merkel that Brant had blocked her pathway — forcing her to “squeeze thr[ough] a narrow space which made her feel uncomfortable” — and, the next day, had bumped into her with a stretcher. Merkel promptly met individually with Young and Brant to discuss these incidents.
Other female employees raised similar complaints about Brant. In March 2006, Deborah Berutti — at that time a student intern in the Occupational Therapy Department — submitted a written complaint to Merkel. Berutti stated that Brant frequently bumped into her, and often would block the doorway to an office with his chair, wait for Berutti to attempt to leave, and “quickly lean back, banging the chair into [her].” Brant received a “final written warning” from Merkel as a result of his “negative behavior” towards Berutti, which, Merkel noted, included inappropriate physical touching.
Mecca Gethers, an Occupational Therapist, worked as a student intern in the summer of 2005 and was hired as a full-time employee in October 2006. As with Young and Berutti, Brant would frequently bump into Gethers and block doorways when she tried to leave. In January 2007, Gethers submitted a written complaint to Merkel. In her complaint, Gethers stated that, on two or three occasions, Brant hit Gethers in the breast when he bumped into her, and stated that the “situation between Roosevelt and [me] ... has become increasingly uncomfortable and hostile and is making it difficult to perform my job.”
Merkel acknowledged receiving repeated complaints from Young, Berutti, and Gethers about Brant. Merkel also acknowledged that all three expressed a belief that Brant was mistreating them because they were women. Merkel did not see gender “as ... the reason for [Brant’s] behavior toward[s] them,” however, as male employees had made similar complaints about Brant mistreating them and bumping into them. Merkel nonetheless raised with Lutman the possibility that Brant be “moved out of [the] department.” According to Merkel, however, Lutman decided they would continue to pursue “progressive discipline” — as apparently provided for by Temple’s collective bargaining agreement with Brant’s union — that ultimately could lead to Brant’s termination.
At the end of December 2006, Young accepted an employment offer from a previous employer at a salary of $38 per hour — $8 more than she was being paid by Temple. She resigned from Temple on January 26, 2007. Young told Merkel that she was resigning because she had “been harassed [for] too long” by Brant, and that “[n]o one was looking at the situation and [her] concerns.” Young was also disappointed that the “Senior COTA” position had never been created, and believed that Merkel had stopped pursuing the matter because of Young’s frequent complaints against Brant.
Brant was terminated on February 2, 2007. According to Merkel’s records, the decision to terminate Brant was made immediately following Gethers’ January 2007 complaint. Brant appealed his termination, which was upheld in April 2007. After Brant was terminated, Merkel unconditionally offered Young her job back. She declined the offer.
*308 Young filed suit in the District Court for the Eastern District of Pennsylvania, asserting a compound hostile work environment and constructive discharge claim and a retaliation claim under both Title VII, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq. The District Court granted summary judgment in favor of Temple on all claims, and Young timely appealed.
II.
We review a grant of summary judgment de novo, using the same standards as the District Court. Jakimas v. Hoffmann-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir.2007). We view the facts in the light most favorable to the nonmoving party. Id.; see also Erie Telecomms. Inc. v. City of Erie, 853 F.2d 1084, 1093 (3d Cir.1988). A party is entitled to summary judgment only “if the pleadings, the discovery and disclosure materials on file, and any affidavits[,] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c)(2).
III.
Young argues that the District Court erred in granting summary judgment on her compound hostile work environment and constructive discharge claim and her retaliation claim.[2] We address each claim in turn.

A. Hostile Work Environment and Constructive Discharge

To prove a prima facie case of a hostile work environment, a plaintiff must establish five elements: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability. Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir.2009); Jensen v. Potter, 435 F.3d 444, 449 (3d Cir.2006), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). To establish a constructive discharge as a result of a hostile work environment, a plaintiff must further prove that the employer “ ‘knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.’ ” Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir.1996) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir.1984)).
In the co-worker harassment context, a plaintiff may establish employer liability on a theory of “negligent failure to discipline or fire, or failure to take remedial action upon notice of harassment.” Knabe v. Boury Corp., 114 F.3d 407, 411 (3d Cir.1997) (quoting Bouton v. BMW of N. Am., Inc., 29 F.3d 103, 106 (3d Cir.1994)). The plaintiff must show that “management knew or should have known about the harassment, but failed to take prompt and adequate remedial action.” Jensen, 435 F.3d at 453 (internal quotation marks omitted). Even if not effective, an employer’s remedial action is adequate if it is “reasonably calculated” to end the harassment. Knabe, 114 F.3d at 412-13.
We agree with the District Court that Young failed to establish a basis for em *309 ployer liability.[3] It is undisputed that, following each complaint, Merkel promptly disciplined Brant for his behavior toward Young and other employees, which included oral warnings, written warnings, a suspension, and, ultimately, termination. The only additional remedial action that Young complains Temple failed to take was transferring Brant out of the Occupational Therapy Department. Temple’s failure to take that step, however, does not by itself render its remedial actions inadequate. See id. at 414 (holding that employer’s issuing of a warning — notwithstanding the plaintiffs belief that the harassing employee should have been transferred — was an adequate remedial measure, as “an employee cannot dictate that the employer select a certain remedial action”). Indeed, rather than transferring Brant, Temple sought to take the necessary steps to terminate him, thus completely removing him from the Hospital (and all of its female employees).[4] We agree that Temple’s actions were promptly taken and “reasonably calculated” to end the harassment.
Young emphasizes that although Merkel received complaints from several female employees about Brant, she did not personally believe that Brant was mistreating them because of their gender. It is also unclear from the record whether Merkel, in disciplining Brant on various occasions, discussed specifically the allegations of gender discrimination with him (as opposed to disciplining him for specific incidents of harassing behavior). These gaps in the record do not compel a contrary result, however. The question is whether Temple’s remedial actions, not its investigation, were adequate. See id. at 412 (“Even if a company’s investigation into complaints of sexual harassment is lacking, the employer cannot be held liable for the hostile work environment created by an employee ... unless the remedial action taken subsequent to the investigation is also lacking.”). Because we conclude that Temple took prompt and adequate remedial actions to address Brant’s harassment, Young’s hostile work environment and constructive discharge claims fail.[5]

*310
B. Retaliation

To establish a prima facie claim of retaliation, a plaintiff must prove that: (1) she engaged in protected conduct; (2) her employer took an adverse employment action against her; and (3) a causal link exists between her protected conduct and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir.2006). An “adverse employment action” under Title VII is an action by an employer that is “serious and tangible enough to alter an employee’s compensation, terms, conditions, or privileges of employment.” Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir.2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir.1997)). “A tangible employment action [is] also defined by reference to a nonexclusive list of possible actions: ‘hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.’ ” Suders v. Easton, 325 F.3d 432, 434 (3d Cir.2003) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)), rev’d on other grounds sub nom. Penn. State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).
Young argues that the District Court erred in concluding that Temple’s failure to promote her to the position of “Senior COTA” did not constitute an adverse employment action.[6] We disagree. This position did not exist when Young requested the promotion, and no one at Temple promised her such a position would (or could) be created. Young’s subjective expectation that Temple would create an entirely new position for her (and her alone) cannot support a prima facie case of retaliation. Cf. Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1137 (10th Cir.2004) (“An employer’s failure to promote a plaintiff to a non-existent position is not enough to support a presumption of intentional ... discrimination.”).
Even if Temple’s failure to create the Senior COTA position and promote Young to that position could be considered an adverse employment action, we agree with the District Court that Young failed to establish a causal link between her complaints to Merkel and Temple’s failure to create the position. Young has presented no evidence to substantiate her belief that Merkel came to believe she was “creating ... disarray” in the department by complaining about Brant, nor has she presented any evidence suggesting a temporal link between her complaints and Merkel’s alleged decision to stop exploring the possible creation of the position. See Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir.2003) (noting that, in the absence of a suggestive temporal link, a plaintiff must come forward with other evidence suggestive of retaliatory animus).
H* H* H* H»
*311 Based on the foregoing, we affirm the judgment of the District Court.

. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

. "The proper analysis under Tide VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.” Weston v. Pennsylvania, 251 F.3d 420, 425 n. 3 (3d Cir.2001).

. Before the District Court, Temple argued that Young could not establish the first, second, or fifth elements of her prima facie case. As to the first element, the Court reasoned that although Young "could not point to anything Brant did which overtly related to her sex,” the fact that two other female employees also complained that Brant was harassing them because of their gender supported an inference of discrimination. On the second element, the Court noted that Young had testified that “problems with Brant happened all the time,” and determined that Brant’s behavior went beyond mere offensive utterances and "into the realm of physically threatening or humiliating." Accordingly, the Court found that Young had established the first two elements of her prima facie case.

. In granting summary judgment for Temple on Young’s hostile work environment claim, the District Court stated that it could not "see what more Temple could have reasonably done [to discipline Brant] without ... running afoul of the collective bargaining agreement.” On appeal, Young appears to argue that the District Court erroneously determined that Temple was shielded from liability under Title VII because it was abiding by the disciplinary process contemplated in the collective bargaining agreement.
We do not believe the District Court intended to suggest that Temple could not be held liable for Brant’s actions, however severe, simply because it had disciplined him in accordance with the collective bargaining agreement. Moreover, there is no evidence that Merkel or others felt constrained by the terms of the collective bargaining agreement from taking remedial steps they otherwise believed were necessary. Indeed, Merkel confirmed in her deposition testimony that she believed the collective bargaining agreement had no effect on her responsibility and authority to investigate discrimination complaints and impose appropriate discipline.

.Even assuming Young had established a basis for employer liability, we would still affirm the District Court’s grant of summary judg *310 ment on her constructive discharge claim because Temple did not "knowingly permit[] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.” Aman, 85 F.3d at 1084 (quoting Goss, 747 F.2d at 888); see also Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n. 4 (3d Cir.2006) (a constructive discharge claim requires “a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment”) (quoting Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir.1992)).

. Young also argues that her constructive discharge was an adverse employment action for purposes of her retaliation claim. Because Young has not established a prima facie case of a hostile work environment or constructive discharge, however, this argument necessarily fails.