**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2996
_____

H.U.; B.U.,
PARENTS AND NATURAL GUARDIANS
OF K.U., A MINOR,

Appellants

v.

NORTHAMPTON AREA SCHOOL DISTRICT;
COLONIAL NORTHAMPTON – IU 20

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(District Court No. 5:18-cv-03896)
District Court Judge: Joshua D. Wolson
_____

Argued on September 21, 2021

(Filed: October 15, 2021)

Before: JORDAN, PORTER, and RENDELL, *Circuit Judges*.

Michael D. Shaffer [Argued]
Shaffer & Gaier
1628 John F. Kennedy Boulevard
8 Penn Center,
Suite 400
Philadelphia, PA 19103

    *Counsel for Appellants*

John E. Freund, III [Argued]
Rebecca A. Young, Esq.
King, Spry, Herman, Freund, & Faul
One West Broad Street
Suite 700
Bethlehem, PA 18018

*Counsel for Appellee, Colonial Northampton – IU 20*

_____

O P I N I O N[*]

_____

**RENDELL**, *Circuit Judge*

In December 2017, K.U. was sexually assaulted by a fellow student on a school van operated by Colonial Intermediate Unit 20 ("CIU 20"). K.U.'s parents, Plaintiffs H.U. and B.U., sued CIU 20 and one of its service districts on her behalf under 42 U.S.C. § 1983. The District Court granted summary judgment against Plaintiffs. For the reasons that follow, we will affirm.

I.

At the time of the assault, K.U. was a fifteen-year-old student who, because of her various neurological disorders, attended Colonial Academy, a school for children with special needs operated by Defendant CIU 20. CIU 20 is a Pennsylvania intermediate unit servicing thirteen school districts, including Northampton Area School District.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CIU 20 transported K.U. to and from Colonial Academy by van. Three or four other students rode the van daily with K.U., accompanied by two CIU staff members: a driver (Elaine Souders) and a monitor (Melonie Young). Souders and Young both received TACT2 "[t]herapeutic aggressive control training," addressing "how to . . . deescalate a student's aggressive behavior." App. 265, 284. TACT2 training does not cover peer-to-peer sexual contact specifically, but all drivers and monitors were instructed in their Employee Manual to "enforce assertive discipline" on school transportation and to "physical[ly] restrain[]" students if it is necessary to "protect the child or other children on the vehicle." App. 227, 250.

The students on the van had assigned seats, with K.U. normally sitting alone. At some point in December 2017, however, K.U. asked if she could move and sit next to another student: A.J. At the time, A.J. was twelve or thirteen years old and had a history of violent contact with his peers, including punching and throwing objects at them. He had also threatened extreme violence against peers and the school. Melonie Young, unaware of this history and never having observed A.J. engage in violence or sexual misconduct, permitted the seat change. *H.U. v. Colonial Northampton - IU 20*, No. 5:18-CV-3896-JDW, 2020 WL 5292073, at *2-3 (E.D. Pa. Sept. 4, 2020). The change was unproblematic for several days but, at some point in late December, A.J. sexually assaulted K.U. on the van ride home from school. He groped her, forced her hand down his pants, and made her perform oral sex on him.

On December 22, K.U. reported the assault to a teacher at Colonial Academy.

3

The assault wrought a severe psychological toll on K.U. In the weeks that followed, she twice attempted suicide by overdosing. She also attempted to get off the school van while it was moving. She has experienced increased depression, anxiety, and difficulties with trust, especially of males.

K.U.'s parents, H.U. and B.U., later brought this action on her behalf. In their Complaint, Plaintiffs asserted that CIU 20 and Colonial Northampton Area School District had violated K.U.'s substantive due process rights under a state-created danger theory. Plaintiffs voluntarily dismissed their claims against the school district and the District Court granted summary judgment in favor of CIU 20 on the remaining claims. *H.U.*, 2020 WL 5292073, at \*4. Applying the state-created danger test of *Bright v. Westmoreland Cnty.*, the Court reasoned that Plaintiffs could not show the assault on K.U. was foreseeable because Young was not on notice that A.J. posed a risk. *Id*. at \*2-3 (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). This appeal followed.

## II.

We have jurisdiction to review the District Court's determination under 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary and "we must grant all reasonable inferences from the evidence to the non-moving party." *See Knabe v. Boury Corp.*, 114 F.3d 407, 410 n. 4 (3d Cir. 1997); *see also Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 246–47 (3d Cir. 2002).

4

III.

Plaintiffs contend that the District Court erred in finding the record did not support a state-created danger claim. They also fault the District Court for not going on to address their failure-to-train theory of municipal liability. We consider each contention in turn.

First, Plaintiffs urge that K.U.'s substantive due process rights were violated because the bus monitor's approval of the seating change "caused [K.U.] to be in a more vulnerable position" seated next to the "violent, unpredictable" A.J. Appellants' Br. at 28. We do not agree. Although what happened to K.U. is undeniably tragic, the elements of a constitutional violation are simply not made out.

Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals. *See DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 198–200 (1989). We have recognized an exception to this rule where the state itself acts to create or enhance a danger that deprives the plaintiff of her substantive due process rights. *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006). To prevail on a state-created danger claim, a plaintiff must prove four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;

> (2) a state actor acted with a degree of culpability that shocks the conscience;

> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

5

> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright*, 443 F.3d at 281 (internal quotation marks and footnotes omitted). Plaintiffs fail this test because they have not shown foreseeability or conscience-shocking action on the part of CIU 20, as the District Court correctly found.

Although we could begin and end our analysis with the absence of conscience-shocking behavior, because this aspect depends to a large extent on a defendant's ability to foresee what occurred, we begin with a consideration of that aspect. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997).

To make out foreseeability, Plaintiffs must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). Foreseeability of harm is assessed from the perspective of the state officers who take the risk-creating action. *See, e.g.*, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 171 (3d Cir. 2017), *as amended* (Sept. 22, 2017) (analyzing foreseeability from the perspective of a football coach who told concussed student to continue practicing); *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 245 (3d Cir. 2016) (analyzing foreseeability from the perspective of a teacher who released a young student to a stranger); *Phillips*, 515 F.3d at 238–39 (analyzing foreseeability from the perspective of two 911 operators who provided personal information to a dangerous criminal).

6

Here, the only state actor Plaintiffs identify is Young, who approved K.U.'s request to sit with A.J. on the van.[1] Consequently, we ask whether A.J. assaulting K.U. was foreseeable *to Young* and conclude that it was not. Young was unaware of A.J.'s past behavioral problems documented in his school records. *H.U.*, 2020 WL 5292073, at *3 ("Ms. Young did not have actual or constructive knowledge about A.J.'s history. . . ."). She had never observed A.J. engage in any sexual misconduct on the school van, nor was she aware of *any* past incident of sexual assault on school transportation.[2] Thus, the risk of serious harm was not foreseeable and Plaintiffs are left unable to satisfy this element of the *Bright* test.

Further, as noted above, because foreseeability is relevant to the shocks-the-conscious element, Plaintiffs' claim also fails there. As Young "ha[d] time to make an 'unhurried judgment[]'" regarding the seat change, Plaintiffs must show deliberate indifference to satisfy the conscience-shocking prong. *See Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (quoting *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d

---

[1] Plaintiffs' strained attempts to impose liability on CIU 20 based on what "it" knew or did are unavailing. A state entity can only act through its employees, and the entity itself can be liable under *Monell* only if it has adopted a custom or policy. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–95 (1978). Moreover, any purported "failure" on the part of an employee of CIU 20—*e.g.* failing to share student history information—does not constitute an affirmative act for the purposes of the state-created danger analysis. *See Bright*, 443 F.3d 276, 284 (3d Cir. 2006) (citing *DeShaney*, 489 U.S. at 197) ("[M]ere 'failure to protect an individual against private violence' does not violate the Due Process Clause.").

[2] Nor was the risk of sexual assault a matter of common sense or experience for a school van monitor. *Cf. Phillips*, 515 F.3d at 237 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996)) (foreseeability may be based on a defendant's "ordinary common sense and experience").

Cir. 2015)).  But Young could not have been 'deliberately indifferent' to a risk she *did not know of*.  *See, e.g.*, *Morse*, 132 F.3d at 910 ("[T]he notion of deliberate indifference contemplates a danger that must at least be foreseeable.").  Thus, Plaintiffs' state-created danger claim founders on this front as well.

As Plaintiffs cannot show a substantive due process violation, the District Court was perfectly justified in stopping its analysis at this point.  *See, e.g.*, *Mulholland v. Gov't Cnty. of Berks, Pa.,* 706 F.3d 227, 238 n. 15 (3d Cir.2013) (internal citations omitted) ("It is well-settled that, if there is no [constitutional] violation in the first place, there can be no derivative municipal claim.").  We choose to go further, however, and hold in the alternative that, even assuming a violation *arguendo*, Plaintiffs still cannot prevail because there is no basis for *Monell* liability here.[3]

Plaintiffs argue that CIU 20 is liable under *Monell* for failing to train its employees regarding peer-to-peer sexual contact because this omission caused a violation of K.U.'s rights.[4]  Although failure-to-train could be a cognizable basis for municipal liability, it generally requires that a "pattern of similar constitutional violations by untrained employees" have occurred, sufficient to put the policymaker on notice of a training deficiency.  *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 399 (1997)).  Here, Plaintiffs have

---

[3] "Generally, we may affirm on any ground supported by the record . . . ."  *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020) (citing *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019)).
[4] *Monell* applies because CIU 20 is classified as a municipal entity.  *Cf. Arnold v. Blast Intermediate Unit 17*, 843 F.2d 122, 127 (3d Cir. 1988).

not identified a single prior substantive due process violation wrought by CIU 20 or its employees to put CIU 20 on notice of a need for additional training. Indeed, the record shows that there had been *no* prior incidents of student sexual assault on school transportation, let alone sexual assaults amounting to constitutional torts.

Plaintiffs attempt to overcome this dearth of past violations by arguing CIU 20 officials were at least aware of the *abstract risk* of such problems, given the special needs of their student population. *Connick* is clear, however, that a pattern of violations is the usual requirement, not just a vague awareness of some broad threat. *See* 563 U.S. at 62; *see also Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) ("Accidents occur, of course. But the *Monell* inquiry asks whether a municipality was deliberately indifferent to the risk of a *constitutional violation*."). Nor have Plaintiffs shown this case falls within the "narrow range of 'single-incident' liability." *Connick*, 563 U.S. at 71–72 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Put simply, state-created danger substantive due process violations were not an 'obvious' consequence of CIU 20's failure to provide peer-to-peer sexual assault training, as no such assault had *ever occurred* at CIU 20 before. *See, e.g.*, *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 225 (3d Cir. 2014) (focusing on the "frequency of [inmate] fights" in finding risk of violations was obvious).

Finally, CIU 20 did require employees to participate in a relevant training program: TACT2. Although this program did not address peer-to-peer sexual conduct specifically, it trained CIU 20 staff on how to confront and resolve student *aggression*. The sexual assault at issue here certainly falls within that broad category, as it was an act

9

of inter-personal physical violence. *See, e.g., Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 385–86 (5th Cir. 2005) (distinguishing between "a complete failure to train" and "a failure to train in one limited area") (internal citations omitted). Young and Souders were also instructed to "enforce assertive discipline" on the van and to "physical[ly] restrain[]" students if it proved necessary to "protect the child or other children on the vehicle." App. 227, 250.

Given these facts, there was no basis in the record to find CIU 20 was deliberately indifferent to the risk of violence, including sexual violence, on school transportation.

IV.

We accordingly will affirm the order of the District Court.