NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3820
_____

WILLIAM GREER; CARL RIVERS; MARILYN LENNOX; ROY MONTFORD;
KEVIN ALDRIDGE; SUSAN BYRD; ELIZAH WARREN, JR.

v.

*MONDELEZ GLOBAL, INC.

Carl Rivers, Marilyn Lennox, Elizah Warren, Jr.,
                                                    Appellants

*(Amended Per Clerk's Order of 11/09/2012)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 2-09-cv-05936
(Honorable Legrome D. Davis)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 9, 2014

Before:  SMITH, SHWARTZ, and SCIRICA, *Circuit Judges*.

(Filed: October 22, 2014)

_____

OPINION OF THE COURT
_____

1

SCIRICA, *Circuit Judge*.

Plaintiff Marilyn Lennox brought suit against Kraft Foods Global, Inc., asserting claims of employment discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d and 2000e (hereinafter "Title VII"), together with a claim for a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1, for withholding wages from her. The District Court, in a thorough opinion, granted Kraft's motion for summary judgment on all counts, holding that Lennox's allegations did not constitute an actionable discrimination claim under Title VII. The court also dismissed her unpaid wages claim for lack of evidence. Lennox filed a timely notice of appeal and seeks relief on all counts. We will affirm.[1]

## I.

Plaintiff Marilyn Lennox worked as a Distribution Center Supervisor at Kraft's Philadelphia bakery from September 2008 until November 2009. Lennox, an African-American woman, alleges she was subjected to a series of racially and sexually discriminatory actions and retaliation by her coworkers during her time at Kraft. To support her claim of discrimination, she testified to comments and acts made by her colleagues over the course of five months that she contends constitute discrimination and retaliation.[2]

---

[1] The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Most of these acts and comments came from co-workers Chu and Ozias: that she probably voted for Obama; that a hip-hop magazine must be hers; that she probably lived

Lennox reports that these incidents began in November 2008, but articulates no race based incidents after January 2009 and no incidents of any kind after March 2009. She reports complaining to her supervisors about these incidents in February and March 2009. In October 2009, Kraft approached Lennox to revisit her individual development plan and to discuss an opportunity for promotion to front line production coach, a position two grade levels higher than the position she held at the time. Despite the opportunity for advancement described by Kraft, Lennox submitted a letter of resignation on October 26, 2009, and worked for two more weeks until her employment ended in November 2009.

## II.

Lennox argues on appeal that the District Court erred in granting summary judgment[3] to Kraft because (1) there were genuine issues of material fact concerning

---

in a rough area; that she probably listened to rap and R&B; that the reason she did not have a boyfriend was because she was hardheaded; a question as to where she lived since she is a young woman; a question as to whether she was wearing her pajamas at work; a reference to her as being "prissy" and "Miss Princess"; a colleague pressuring her to swap vacation times; her trainer responding harshly when she asked how to perform some tasks; a colleague making a racially offensive joke in her presence (although not toward her); a colleague telling Lennox that a fellow employee did not like her; a colleague asking her to write up an employee for a violation that Lennox did not believe the employee had committed; a pornographic magazine being left out on a piece of machinery in the factory; and a sexually suggestive image being posted on the refrigerator in the break room.

[3] We exercise plenary review over an order granting a defendant's motion for summary judgment. *Miller v. Eichelay Eng'rs*, 886 F.2d 30, 35 (3d Cir. 1989). A court may grant summary judgment where the moving party shows that "there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). In opposing a motion for summary judgment, the nonmovant may not rely on his pleadings alone, but must produce evidence that demonstrates a genuine issue of fact for trial. Fed. R. Civ. P. 56(c) & (e). If the record, taken as a whole, could not lead a

3

whether she suffered an adverse employment action and thus demonstrated a prima facie case of discrimination; (2) she proved the elements of a retaliation claim under Title VII; and (3) there were genuine issues of material fact as to whether Kraft withheld wages from her.

**A.**

Discrimination claims under Title VII, as well as § 1981,[4] are governed by a burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Id.* at 802. If the plaintiff succeeds, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. *Id.* If the defendant articulates such a reason, then the plaintiff has the opportunity to prove by a preponderance of the evidence that the reasons offered by the defendant were a pretext for discrimination. *Id.*

To prove a prima facie case of discrimination, a plaintiff must produce evidence that (1) she is a member of a protected class; (2) she was qualified for the position that she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of

---

rational trier of fact to find for the nonmovant, there is no genuine issue for trial, and summary judgment must be granted in favor of the movant. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] Because the substantive elements of an employment discrimination claim brought under § 1981 are identical to those brought under Title VII, § 1981 claims are also governed by the *McDonnell Douglas* burden-shifting framework. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010); *see also Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009).

discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–12 (3d Cir. 1999). Kraft does not contest the first or second element, but contends that Lennox did not suffer any adverse employment action and thus cannot establish a prima facie case of discrimination.[5]

An adverse employment action can generally be demonstrated by a hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 749 (1998). Alternatively, a plaintiff may prove an adverse employment action by proving that he or she was subjected to a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67 (1986); *see also Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (holding that a hostile work environment is a basis for various discrimination claims, including § 1981 claims). Lennox contends she suffered an adverse employment action in the form of a hostile work environment.

To demonstrate a hostile work environment, a plaintiff must show (1) she suffered intentional discrimination because of her sex or race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability exists. *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990).

---

[5] Because we find Lennox failed to demonstrate an adverse employment action, we need not address the fourth element, which deals with whether a discriminatory inference can be drawn from such an action.

The threshold for pervasiveness and regularity of discriminatory conduct is high. A hostile work environment is actionable under Title VII only if it is so severe and pervasive that it "alters the conditions of the victim's employment" and creates an "abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). The environment must be objectively hostile, not just hostile in the plaintiff's view. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether an environment is sufficiently hostile or abusive is determined by considering the totality of the circumstances, including the "frequency of the conduct; its severity, and whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Breeden*, 532 U.S. at 271 (quotation marks and internal citations omitted).

Lennox's claim fails because the conduct she alleges does not rise to the level of severity necessary to prove a hostile work environment. Discriminatory behavior must be sufficiently severe to establish a hostile work environment. Simple teasing, offhand comments, and isolated incidents do not amount to "discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)). "Mere offensive utterances" are insufficient to create a hostile environment, even if they engender offensive feelings in an employee. *Id.*; *see Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). In *Weston v. Pennsylvania*, we found that a plaintiff's allegation that he was subjected to a series of offensive "comments, jokes and jibes" was insufficient to state a Title VII claim, absent a change in a "term, condition or privilege" in his employment. 251 F.3d 420, 427–28 (3d Cir. 2001), *abrogated on other*

6

*grounds as recognized by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Lennox's claims do not constitute a hostile work environment because her colleague's alleged statements, while unprofessional, are "mere offensive utterances" rather than severe, threatening, or humiliating conduct. *Breeden*, 532 U.S. at 271. Lennox does not show how the alleged statements that suggest racial animus are objectively hostile acts that altered the "terms and conditions" of her employment. *Id.* at 270. She also fails to show how the comments support her claim that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 67). Taken together, these comments are not the type of severe and pervasive conduct necessary to constitute a hostile work environment. The alleged acts, although unprofessional, similarly do not constitute an "objective change in the conditions" of her employment. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001) (quoting *Faragher*, 524 U.S. at 787). Considering all of Lennox's allegations together, they do not give rise to a triable issue of fact concerning whether Lennox was subjected to a hostile work environment.

Moreover, Lennox cannot establish respondeat superior liability by Kraft. For respondeat superior liability to exist, a plaintiff must "demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate action." *Weston*, 251 F.3d at 427. An employer's investigation into a harassment complaint need not be perfect to satisfy this standard. *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir. 1997). Instead, whether an

7

employer's response is adequate turns on "whether the action was reasonably calculated to prevent further harassment." *Id.*

The only concrete instance in which Lennox reported a racial incident to Kraft occurred in a February 2009 email.[6] In response to Lennox's email, Kraft met with the employees involved in the alleged incident and ordered them to stop making the comments. Lennox cannot point to any specific racial incident that she reported or articulate the occurrence of any concrete event after Kraft's meeting with the employees. Accordingly, no respondeat superior liability exists, as Kraft's response addressed Lennox's concerns and was "reasonably calculated to prevent further harassment." *See id.*

Finally, Lennox fails to show that her colleagues' behavior created a hostile work environment by unreasonably interfering with her employment. Discriminatory behavior may also contribute to a hostile work environment if it produces a "constructive alteration in the terms or conditions of employment" in the form of severe or pervasive discrimination. *Burlington Indus., Inc.*, 524 U.S. at 752. Lennox fails to demonstrate any such constructive alteration. She stayed at Kraft for eight months following the final recorded incident of discriminatory behavior, until she voluntarily resigned.[7] During this

_____

[6] Although Kraft supplied an independent Helpline on which to report complaints, Lennox never used the line to report any of her concerns.
[7] Lennox also contends that she was constructively discharged from Kraft, and that this discharge constitutes an adverse employment action. To make out a constructive discharge claim, a plaintiff must show greater severity or pervasiveness than the minimum required to prove a hostile working environment. *Spencer v. Wal-Mart Stores,*

time, Lennox did not complain to her supervisors about any incidents of discriminatory conduct.

Considering the totality of the circumstances, the conduct Lennox alleges does not rise to the level of severity, pervasiveness, and regularity required for a hostile work environment claim. Accordingly, we find the District Court correctly granted summary judgment on Lennox's claim of discrimination under 42 U.S.C. § 1981 and Title VII.

**B.**

Lennox's second claim is that the court erred in granting summary judgment to Kraft on her retaliation claim. Under Title VII, it is unlawful "for any employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Breeden*, 532 U.S. at 269.

To make out a prima facie case of retaliation, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir.

_____

*Inc.*, 469 F.3d 311, 317 n. 4 (3d Cir. 2006) (quoting *Landsgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994)). Because Lennox failed to establish conduct sufficient to establish a hostile work environment, her constructive discharge claim fails. Further, Lennox continued to work at Kraft for eight months past the last reported discriminatory incident, which undermines her argument that she had no choice but to resign in light of the discriminatory acts.

9

1999). The anti-retaliation provision of Title VII covers only those employer actions that are "materially adverse to a reasonable employee or job applicant" and would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Lennox's retaliation claim fails because she does not provide evidence of any retaliatory acts that occurred following her complaint to her supervisors in February 2009. She alleges only that her supervisors failed to respond to her complaints and that her colleagues' behavior did not improve. On the evidence presented, this is not enough to support a claim of retaliation. Accordingly, we agree with the District Court that Lennox fails to demonstrate retaliation.[8]

### C.

Finally, Lennox challenges the court's grant of summary judgment on the unpaid wages claim. Lennox alleges Kraft failed to pay her for the last week that she worked, but she fails to provide any evidence that she was not paid. And Kraft has produced evidence that she was paid. On a motion for summary judgment, the nonmovant must produce evidence that demonstrates a genuine issue of fact for trial. Fed. R. Civ. P. 56(c) & (e). Lennox has failed to meet her burden. Accordingly, we will affirm the District Court's grant of summary judgment in Kraft's favor.

---

[8] Lennox argues on appeal that her supervisor retaliated in the form of an offer to transfer into another department. Because she does not raise this issue until the appellant's reply brief, neither Kraft nor the District Court had the opportunity to consider it. "We generally refuse to consider issues that the parties have not raised below." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013). Accordingly, we decline to address it.

**III.**

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to Kraft.